### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Gregory Eckleberry** | : | **CIVIL ACTION NO.:** |
| **Plaintiff** | : | |
| | : | |
| **Versus** | : | |
| | : | |
| **Insight Service Group, Inc. d/b/a ISG** | : | **September 20, 2012** |
| **Defendant** | : | |


### COMPLAINT AND DEMAND FOR JURY TRIAL

### JURISDICTION

1.   This is an action for damages, declaratory and injunctive relief, punitive damages, compensatory damages, and attorney's fees brought pursuant to Fair Labor Standards Act ("FLSA"). 29 U.S.C. 201 *et. seq*., and Connecticut General Statutes ("CGS") §31-72.

2.   The Plaintiff, MR. GREGORY ECKLEBERRY, ("Mr. Eckleberry" or "Plaintiff") brings this action for unpaid wages and for damages for retaliation against his former employer, INSIGHT SERVICE GROUP, INC. D/B/A ISG ("ISG" or "Defendant"), in violation of the FLSA and CGS §31-72, and wrongful termination.

3.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, and with respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367, in that the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

*VENUE*

4.      Venue in this district is appropriate pursuant to 28 U.S.C. §1391, because this is the district in which the events giving rise to the cause of action arose.

5.   Plaintiff, Mr. Eckleberry, is a citizen of the United States, residing in North Branford, CT.  At all times relevant to this Complaint, the Plaintiff was an employee of the Defendant, as that term is defined by the FLSA and in the CGS.


*PARTIES*

6.   Plaintiff is a citizen of the United States and resident of Connecticut and currently resides at 18 Pine Hollow Road, North Branford, CT 06471.

7.   Defendant has a principal place of business located at One Corporate Place, Danvers, MA 01923.  Defendant operates out of multiple locations across the United States.

8.   At all times during his employment with the Defendant, the Plaintiff worked at various locations throughout Connecticut, and occasionally would perform work in New York and Massachusetts.

9.   Defendant is an employer as that term is defined in the FLSA and the CGS.

10. Defendant employs in excess of fifteen (15) employees.

## *FACTS*

11. On or about September 26, 2011, Plaintiff commenced employment as an Investigator, performing surveillance and investigation services for the Defendant.

12. Plaintiff's job duties included, but were not limited to, performing surveillance on assigned subjects, creating and submitting daily written reports documenting his observations, obtaining, formatting, and transmitting to the Defendant photographs and videos of the assigned subjects, reviewing reports and other information pertaining to future assignments, phone consultations and email communications with supervisors and other investigators, and conducting online research. These activities were all integral and indispensible to the performance of Plaintiff's job.

13. Plaintiff would generally receive emails in the afternoon from the Defendant, which provided his assignments for the next day. Plaintiff had to review the information provided in the email to become familiar with the subject to be investigated. The emails would also include the time and location for the investigation to be conducted.

14. Plaintiff would generally be assigned one to three separate assignments for the following day. Depending on the level of activity that took place while Plaintiff was performing the assigned surveillance, Plaintiff would occasionally be assigned additional work during the course of the day.

15. For each surveillance subject that he was assigned, Plaintiff would be required to go to the assigned location, make observations and document them in writing, obtain photographs and videos, and check in with a case manager by phone at regular intervals.

16. Plaintiff would document the time he spent performing surveillance at the assigned locations on time sheets. Plaintiff would be paid for that time at an hourly rate of $20.00. For any hours over forty per work week that he recorded on those time sheets, Plaintiff would be paid at the rate of $30.00 per hour.

17. Plaintiff performed these surveillance activities Monday through Saturday, with Sundays scheduled off. Occasionally, Plaintiff would also have to perform some work on Sundays. Plaintiff's start and end times during a work day would vary depending on the assignment.

18. At the end of the day, after Plaintiff completed his assignments for the day, Plaintiff would return to his home to complete written reports, update templates, and complete timesheets on each assignment. Plaintiff would also upload and transmit videos and photographs from his camera to the Defendant. The amount of time spent on these tasks varied, depending on the amount of activity Plaintiff observed while on his assignment and the number of assignments he had that day.

19. Plaintiff also had to review information that was emailed to him by the Defendant to prepare for his assignments for the following day.

20. Plaintiff was not permitted by the Defendant to record the time he spent writing reports, updating templates, completing timesheets, uploading and transmitting photographs and videos, and reviewing new assignment information. As a result, Plaintiff was not paid for any of the time he spent on these tasks.

21. Plaintiff performed additional work for which he was not compensated, including participating in telephone conferences with his supervisors and other investigators, obtaining

suitable vehicles in which to perform surveillance work, and obtaining keys or access passes to enable him to access certain locations to perform surveillance work.  The Defendant did not permit the Plaintiff to enter the time spent on these tasks on his time sheets.

22. Plaintiff voiced his concerns to the Defendant about not being paid for time he worked on several occasions.

23. On or about November 5, 2011, Plaintiff sent Karen Dognazzi, his Case Manager at ISG, an email following a conversation he had with Ms. Dognazzi regarding his concerns about the work that he had to perform without getting paid.  Plaintiff was concerned about not being able to include time on his timesheets for uploading videos and writing reports. Ms. Dognazzi did not respond to the Plaintiff's email.

24. On or about March 24, 2012, Plaintiff again complained via text message to Ms. Dognazzi about having to upload videos at night and not getting paid for his work.

25. On or about March 26, 2012, Plaintiff contacted the United States Department of Labor (USDOL) at their Boston, Massachusetts office and filed a wage complaint with the USDOL (File No. 1653177) regarding his concerns about not being paid for all of the time that he spent working for the Defendant.

26. On or about March 26, 2012, Plaintiff informed Ms. Dognazzi via text message that he had just made a complaint against the Defendant with the USDOL.

27. On or about March 27, 2012, Plaintiff received an email from Michelle Reardon, the Defendant's Director, who said that Ms. Dognazzi had forwarded the Plaintiff's text messages to her.  Plaintiff sent Ms. Reardon a reply email and provided her with information about retaliation claims, specifically that any employee who files a complaint under the

FLSA complaining about failure to pay overtime is protected against retaliation.  Plaintiff did not receive a response to his email from Ms. Reardon.    Plaintiff did not receive a job assignment on March 27, 2012.

28. As a result of these communications, the Defendant, by and through Ms. Dognazzi and Ms. Reardon, was placed on notice that Plaintiff had contacted the USDOL regarding his concerns about wages.

29. On or about March 27, 2012, Plaintiff again emailed Ms. Reardon about his concerns regarding the work he has to perform off the clock, and indicated that he believed that ISG's business practices were unlawful under the FLSA.  Plaintiff also requested that Ms. Reardon provide him with work assignments.

30. On or about March 28, 2012, Plaintiff spoke with John Wolf, the Defendant's Chief Operating Officer and requested that he be assigned work.  Mr. Wolf arranged for the Plaintiff to obtain job assignments.  Several days later, on or about April 3, 2012, Mr. Wolf arranged for Plaintiff to report to another Case Manager, Ian Maxwell, who would act as an intermediary between Plaintiff and Ms. Dognazzi.

31. On or about March 30, 2012, Plaintiff spoke with Mr. Wolf regarding Plaintiff's concerns about not being compensated for the time he spent performing work for the Defendant that was not recorded on his time sheets.  Plaintiff had attempted to include entries on his timesheets for time spent uploading videos and writing reports.  Mr. Wolf contacted the Plaintiff and told him that he was not allowed to enter that time on his time sheets. Following his conversation with Mr. Wolf, Plaintiff sent Ms. Dognazzi an email indicating that he spoke with Mr. Wolf about the Plaintiff's "billing for video uploading and report

writing," asking Ms. Dognazzi to remove that time from his time sheets, and indicating that Plaintiff would no longer put that time on his timesheets.

32. On or about April 16, 2012, Plaintiff received a letter from the USDOL acknowledging his complaint regarding the Defendant.

33. On or about May 25, 2012 Investigator Thomas Carroll, and agent from the USDOL, visited the Defendant's corporate office to request records from the Defendant.

34. On or about July 11, 2012, Plaintiff did not receive any work assignments. Plaintiff attempted to contact Mr. Maxwell but was unable to reach him.

35. On or about July 12, 2012, Plaintiff received a telephone call from Robert Reardon, the Defendant's Chief Executive Officer.  Mr. Reardon told Plaintiff that there was a lack of work in the Plaintiff's area and his employment was being terminated.

36. On information and belief, the reason given for Plaintiff's termination (namely, lack of work in Plaintiff's area) is false.  In the Plaintiff's experience, and on information and belief, summer is a busy time for surveillance assignments because people are most active and insurance companies request more surveillance assignments in the summer than during other times of year.  Prior to his termination, Plaintiff had worked several workweeks that consisted of more than forty hours.  Additionally, following his termination, Plaintiff continued to receive telephone calls from other investigators who were inquiring about cases that the Plaintiff had worked on and that had been reassigned to those investigators.

37. After the Plaintiff was terminated, Defendant placed advertisements to hire surveillance investigators in Springfield, Massachusetts on July 26, 2012; in Hartford, Connecticut on July 30, 2012 and on August 15, 2012; in New York City, New York on July

23, 2012 and August 2, 2012; in White Plains, New York on August 2, 2012; and in Albany, New York on August 2, 2012. These advertisements were listed on a website called "Get Private Investigator Jobs" located at the web address www.getprivateinvestigatorjobs.com. Defendant placed similar advertisements throughout July and August 2012 for surveillance investigators for various locations, including a number of other locations in New York and other states.

## FIRST CAUSE OF ACTION- FLSA- FAILURE TO PAY WAGES- 29 U.S.C. §207(a)(1)

38. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 36 of this Complaint with the same force and effect as if set forth herein.

39. Plaintiff was a non-exempt employee and was entitled to be paid his normal hourly rate for all hours worked up to forty per work week and one and one-half times his normal hourly rate for all hours worked in excess of forty per work week.

40. Defendant required or allowed Plaintiff to perform work for which he was not paid.

41. Defendant's actions were in violation of the FLSA.

42. As a result of the Defendant's unlawful conduct, the Plaintiff has suffered lost wages and other damages, and has been forced to incur attorneys' fees and costs.

## SECOND CAUSE OF ACTION- CGS- FAILURE TO PAY WAGES- C.G.S. §31-58, *et. seq.*

43. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 42 of this Complaint with the same force and effect as if set forth herein.

44. Plaintiff was a non-exempt employee and was entitled to be paid his normal hourly rate for all hours worked up to forty per work week and one and one-half times his normal hourly rate for all hours worked in excess of forty per work week.

45. Defendant required or allowed Plaintiff to perform work for which he was not paid.

46. Defendant's actions were in violation of the CGS.

47. As a result of the Defendant's unlawful conduct, the Plaintiff has suffered lost wages and other damages, and has been forced to incur attorneys' fees and costs.

## THIRD CAUSE OF ACTION- FLSA- RETALIATION- 29 U.S.C. §215(a)(3)

48. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 46 of this Complaint with the same force and effect as if set forth herein.

49. Plaintiff made multiple complaints to Defendant about not being paid for all the hours he worked.

50. Plaintiff filed a complaint with the USDOL regarding the Defendant's failure to pay his wages under the FLSA.

51. Defendant was aware of Plaintiff's complaint to the USDOL.

52. As a result of his internal complaints to the Defendant and his complaint to the USDOL, Plaintiff was protected from retaliation under the FLSA.

53. Defendant retaliated against Plaintiff by failing to provide him with work assignments immediately after it learned of his complaint.  This action by the Defendant was in violation of the FLSA.

54. Defendant further retaliated against Plaintiff by terminating his employment. This action by the Defendant was in violation of the FLSA.

55. As a result of Defendant's unlawful conduct, the Plaintiff has suffered lost wages and other damages, and has been forced to incur attorneys' fees and costs.

## FOURTH CAUSE OF ACTION- WRONGFUL TERMINATION

56.  Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 54 of this Complaint with the same force and effect as if set forth herein.

57. Plaintiff made multiple complaints to the Defendant about not being paid for all the hours he worked.

58. Plaintiff filed a complaint with the USDOL regarding the Defendant's failure to pay his wages under the FLSA.

59. Defendant was aware of Plaintiff's complaint to the USDOL.

60. Defendant retaliated against Plaintiff for his complaint to the USDOL by failing to provide him with work assignments immediately after it learned of his complaint, and by terminating his employment.

61. This action by the Defendant was in violation of the public policy against discharging or discriminating against employees who make good faith complaints concerning wages or work hours, which is embodied in C.G.S. §31-58 et. seq.

62. As a result of Defendant's unlawful conduct, the Plaintiff has suffered lost wages and other damages, and has been forced to incur attorneys' fees and costs.

## REQUEST FOR JURY TRIAL

The Plaintiff requests a trial by jury as to all claims to which he is entitled under the law.

Respectfully submitted,
THE PLAINTIFF

Robert Fortgang Associates
Greystone Court
573 Hopmeadow Street
Simsbury, CT  06070
(860) 658-1055

By:  /s/ Robert Fortgang
    Robert Fortgang
    CT Federal Juris No. ct5437
    CT State Juris No. 402006

## DEMAND AND RELIEF

WHEREFORE, the Plaintiff respectfully request this Court grant the Plaintiff the following relief:

a.   Declaring that the acts and practices complained of herein are in violation of state and federal laws;

b.   Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

c.   Awarding Plaintiff compensatory and punitive damages;

d.   Awarding Plaintiff the costs of this action together with reasonable attorneys' fees.

e.   Granting such other and further relief as this Court deems necessary and proper.


Respectfully submitted,
THE PLAINTIFF


Robert Fortgang Associates
Plaintiff's legal counsel
Greystone Court
573 Hopmeadow Street
Simsbury, CT  06070
(860) 658-1055

By:        /s/ Robert Fortgang
           Robert Fortgang
           CT Federal Juris No. ct5437
           CT State Juris No. 402006